# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FORT TRANSFER COMPANY, INC.,

    Plaintiff,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,

    Defendant.

No. 06 C 3529

Wayne R. Andersen
District Judge

## MEMORANDUM, OPINION AND ORDER

This matter is before the court on defendant Central States, Southeast and Southwest Areas Pension Fund's motion [9] to dismiss pursuant to Federal Rule 12(b). Also before the court is plaintiff Fort Transfer Company, Inc.'s motion [24] for a writ of prohibition pursuant to 28 U.S.C. § 1651, a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 and expedited action on its complaint pursuant to Federal Rule 57. For the following reasons, Central States, Southeast and Southwest Areas Pension Fund's motion [9] to dismiss is granted, and Fort Transfer Company, Inc.'s motion [24] for a writ of prohibition, a preliminary injunction and expedited hearing is denied.

## BACKGROUND

Plaintiff Fort Transfer Company, Inc. ("Fort Transfer") is a for-hire trucking company headquartered in Morton, Illinois that transports herbicide products throughout the United States. It has been a contributing employer in defendant Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") through multiple collective bargaining agreements with the Teamsters Union Local 627 since 1992. The Pension Fund is a multiemployer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1301 et seq.

Fort Transfer commenced this action in July 2006 by filing a complaint for declaratory judgment and other relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Fort Transfer sought a judgment from this court that the Pension Fund's threatened expulsion of Fort Transfer from participation in the Pension Fund would be unlawful because, as Fort Transfer claims, it is in full compliance with its obligations to its covered employees and to the Pension Fund under its collective bargaining agreement. The Pension Fund then filed a motion to dismiss pursuant to Federal Rule 12(b) asserting: (1) lack of subject matter jurisdiction; (2) lack of ripeness due to the fact that the Pension Fund's Board of Trustees had not yet rendered a decision to expel Fort Transfer; (3) lack of justiciability because the parties' legal positions were not fixed and concrete enough for adjudication; and (4) failure to exhaust administrative remedies with the Pension Fund under the arbitration procedures set forth in the MPPAA, 29 U.S.C. § 1401.

On November 8, 2006, after the motion to dismiss was fully briefed, the Trustees of the Pension Fund decided to expel Fort Transfer on December 9, 2006 from participation in the Fund. Fort Transfer then filed its motion for a writ of prohibition pursuant to 28 U.S.C. § 1651, a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 and expedited action on its complaint pursuant to Federal Rule 57. That motion essentially seeks an order from this court to prevent the Pension Fund from taking any further action as a result of the expulsion that would have adverse consequences on Fort Transfer, specifically to enjoin the Pension Fund from issuing a notice and demand for payment of withdrawal liability so that the court may consider the initial claim Fort Transfer raised in its complaint -- whether the Pension Fund's decision to expel Fort Transfer was unlawful.

2

## DISCUSSION

### I. The Pension Fund's Motion to Dismiss

In its four-count complaint, Fort Transfer seeks a declaratory judgment reversing the Pension Fund's decision to terminate Fort Transfer's participation in the Fund and barring enforcement of three already-issued partial liability assessments. Specifically, Count I alleges anticipatory breach of contract and trust agreement. Count II alleges a violation of the Taft-Hartley Act, 29 U.S.C. § 185(a). Count III alleges a violation of ERISA, 29 U.S.C. § 1451, and Count IV alleges retaliation and breach of contract by improper demands for partial withdrawal liability. The Pension Fund has moved to dismiss the complaint pursuant to Federal Rule 12(b) asserting: (1) lack of subject matter jurisdiction; (2) lack of ripeness due to the fact the Pension Fund's Board of Trustees had not yet rendered a decision to expel Fort Transfer; (3) lack of justiciability because the parties' legal positions were not fixed and concrete enough for adjudication; and (4) failure to exhaust administrative remedies with the Pension Fund under the arbitration procedures set forth in the MPPAA, 29 U.S.C. § 1401.

#### A. Counts III and IV Are Dismissed for Failure to Exhaust Administrative Remedies

The court rejects the Pension Fund's argument that this court does not have subject matter jurisdiction but grants its motion to dismiss Counts III and IV for failure to exhaust administrative remedies.

##### 1. This Court Has Subject Matter Jurisdiction Pursuant to 29 U.S.C. § 1451 and Declines To Issue a Writ of Prohibition

As an initial matter, this court first must address the jurisdictional issues raised in the Pension Fund's motion to dismiss before addressing the Fund's remaining arguments in its motion to dismiss and Fort Transfer's request for a preliminary injunction. Although the Pension Fund's

3

formal decision to terminate Fort Transfer's participation in the Pension Fund eliminates some of the ripeness arguments made by the Pension Fund, jurisdictional issues persist.

In its complaint, Fort Transfer asserts jurisdiction, among other jurisdictional bases, under 29 U.S.C. § 1451, which provides:

> A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.

29 U.S.C. § 1451(a)(1). The Pension Fund argues that there is no subject matter jurisdiction under section 1451 because the expulsion of an employer from a plan does not fall under subtitle E, which is the subtitle referenced in section 1451, and subtitle E only deals with withdrawal liability. However, Fort Transfer asserts that jurisdiction is proper under section 1451 because subtitle E covers sections 1381 1453, including section 1383 which defines what constitutes complete withdrawal from a plan.

In *Borntrager v. Central States, Southeast and Southwest Areas Pension Fund*, another district court considered this same issue and concluded that a federal court did, in fact, have subject matter jurisdiction to review a pension plan's decision to expel an employer. 2003 WL 22251407, at *2 (N.D. Iowa July 2, 2003), appeal dismissed for lack of appellate jurisdiction, 425 F.3d 1087 (8th Cir. 2005). The *Borntrager* court recognized that ERISA does not specifically address the expulsion of an employer from a plan. *Id.* However, that court determined that ERISA's definition of what constitutes a "complete withdrawal" from a plan as defined in section 1383 "is useful in making this assessment." *Id.*

Section 1383 provides: "[A] complete withdraw from a multiemployer plan occurs when an employer – (1) permanently ceases to have an obligation to contribute under a plan, or (2)

4

permanently ceases all covered operation under the plan." 29 U.S.C. § 1383(a). The *Borntrager* court determined that "[a]n expulsion of an employer should therefore qualify as a 'complete withdraw' from a plan." 2003 WL 22251407, at *2 (citing cases); *see Central States Southeast and Southwest Areas Pension Fund v. Jones Motor Corp, Inc.*, 1999 WL 521163, *2 (N.D. Ill. July 13, 1999) (finding that Central States' decision to expel the employer from participation in the pension fund constitutes a complete withdraw unless the employer offers some evidence that it still is required to continue making contributions after its expulsion); *Robbins v. The Kohn Beverage Co.*, 1985 WL 955, *4 (N.D. Ill. Apr. 29, 1985) (stating "where Congress has declined to except expulsion from the definition of withdraw, this court will not create such an exception"). Based on this assessment, the *Borntrager* court concluded:

> Because complete withdraw is covered under § 1383 and § 1383 falls within subtitle E under 1451, and because the plaintiffs argue they have been adversely affected by the expulsion, the plaintiffs may bring an action for relief under § 1451.

2003 WL 22251407, at *2.

This court agrees with the analysis of the district court in *Borntrager* with regard to its conclusion that a federal court does, in fact, have subject matter jurisdiction. The expulsion of an employer from participation in a pension fund triggers a complete withdrawal as defined by 29 U.S.C. § 1383. Expulsion may not be a voluntary withdrawal from a pension fund, but it is a withdrawal nonetheless. There is nothing in section 1383 that delineates the events that may cause a complete withdrawal. Rather, it simply defines what constitutes a complete withdrawal. In this case, the Pension Fund expelled Fort Transfer from the Fund for its alleged violation of the Fund's Adverse Selection Rule. Fort Transfer obviously disputes that decision, yet the consequence of the expulsion triggers Fort Transfer's complete withdrawal from the Pension Fund because Fort

5

Transfer "permanently ceases to have an obligation to contribute under a plan." 29 U.S.C. § 1383. Accordingly, because complete withdraw is covered under section 1383, and section 1383 falls within subtitle E under 1451, and because Fort Transfer asserts it has been adversely affected by the expulsion, subject matter jurisdiction is proper under 29 U.S.C. § 1451.

### 2. Counts III and IV Are Subject to Mandatory Arbitration

Since this court has determined that there is, in fact, subject matter jurisdiction, the court now must consider whether this matter is properly before a federal district court or whether this matter is subject to mandatory arbitration pursuant to 29 U.S.C. § 1401. The Seventh Circuit has held that an arbitration requirement is not jurisdictional but rather is an exhaustion of administrative remedies requirement. *See Robbins v. Admiral Merchants Freight Inc.*, 846 F.2d 1054 (7th Cir. 1988).

Section 1401(a) specifically provides:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

29 U.S.C. § 1401(a)(1). Fort Transfer contends that section 1401(a)(1) is not applicable because it only is contesting its expulsion from the Pension Fund and not the assessment of withdrawal liability, while the Pension Fund argues that this claim is subject to mandatory arbitration because this matter ultimately relates to the assessment of withdrawal liability which is subject to mandatory arbitration. The pension fund defendant in *Borntrager* asserted this same argument in that case, and it was rejected. 2003 WL 22251407, at *3. On this point, this court respectfully disagrees with the *Borntrager* court and concludes that this matter is subject to mandatory arbitration.

As stated above, the expulsion of an employer from participation in a pension fund triggers a complete withdrawal as defined by 29 U.S.C. § 1383. Although the expulsion may not be a

6

voluntary withdrawal from a pension fund, it is a withdrawal nonetheless. The determination made by the Trustees of the Pension Fund to expel Fort Transfer from the Fund essentially is a determination of complete withdrawal, and "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 . . . shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

Count III alleges a violation of ERISA, 29 U.S.C. § 1451, based on Fort Transfer's expulsion from the Pension Fund, and ERISA authorizes such a claim under section 1451 for an employer that allegedly is aggrieved by a determination of complete withdrawal under 29 U.S.C. § 1383. However, that dispute must be arbitrated pursuant to 29 U.S.C. § 1401(a)(1). Count IV alleges retaliation and breach of contract by improper demands for partial withdrawal liability. However, Fort Transfer already has initiated arbitration proceedings with regard to the three partial withdrawal liability assessments challenged in Count IV. An employer who disagrees with an arbitration award can file suit to vacate that award pursuant to 29 U.S.C. § 1401(b)(2). However, the merits of the claim first must be determined by the arbitrator, and the arbitration award must come before the lawsuit can be filed. Therefore, the court grants the Pension Fund's motion to dismiss Counts III and IV for failure to exhaust administrative remedies.

### B. Counts I and II Also Are Dismissed

Count I alleges a claim for anticipatory breach of contract and trust agreement and challenges the Pension Fund's Adverse Selection Rule. Count II alleges a violation of the Taft-Hartley Act and claims that its expulsion from the Pension Fund is illegal. In essence, these claims fundamentally are premised on Fort Transfer's argument that its expulsion from participation in the Pension Fund is unlawful. Putting a different label on these claims does not permit Fort Transfer to do an end run around 29 U.S.C. § 1401 and would defeat Congress' intent that such claims are subject to

7

mandatory arbitration. As explained above, it is the holding of this court that Fort Transfer's claim challenging its expulsion is subject to mandatory arbitration pursuant to 29 U.S.C. § 1401. The merits of Fort Transfer's claim first must be determined by an arbitrator. Thus, the court dismisses Counts I and II pending resolution of the mandatory arbitration proceedings.

## II. Fort Transfer's Motion for a Preliminary Injunction

Fort Transfer seeks a ruling from this court on the legality of Fort Transfer's expulsion from participation in the Pension Fund and requests that the court issue a preliminary injunction to prevent the Pension Fund from issuing its notice and demand for withdrawal liability until the court can address the merits of Fort Transfer's complaint challenging the expulsion. However, as explained above, this court has determined that Fort Transfer's claim challenging its expulsion from the Pension Fund is subject to mandatory arbitration. However, assuming *arguendo* that this matter is not subject to the mandatory arbitration procedures set forth in 29 U.S.C. § 1401, the court declines to enter any injunctive relief.

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear and convincing showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Injunctive relief is to be used only in limited circumstances which clearly demand it. *See Instant Air Freight Co. v. C. F. Air Freight, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983). The standard for obtaining a preliminary injunction under Federal Rule 64 is settled and the movant must show: (1) a reasonable likelihood that it will prevail on the merits, (2) that no adequate remedy at law exists, (3) that it will suffer irreparable harm without injunction relief and the irreparable harm to the plaintiff outweighs any irreparable harm the defendant will suffer if the court grants the preliminary injunction and (4) that the injunction will not harm the public interest. *See Goodman v. Illinois Dept. of Financial and Professional*

8

*Regulation*, 430 F.3d 432, 437 (7th Cir. 2005); *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F. 3d 107 (7th Cir. 2005).

A.     **Fort Transfer Cannot Show a Reasonable Likelihood of Success on the Merits**

Fort Transfer claims that it has a reasonable likelihood of establishing that its expulsion from the Pension Fund was unlawful. The court, however, disagrees. To determine whether a plaintiff has a reasonable likelihood of success on the merits, Fort Transfer argues that the court must assess whether it has "a greater than negligible chance of winning." *AM General Corp. v. Daimler Chrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Thus, the court must consider preliminarily whether the Pension Fund's Board of Trustees' decision to expel Fort Transfer was unlawful. As an initial matter, it is important to note that the arbitrary and capricious standard of review applies to the court's review of the Trustees' decision to expel Fort Transfer and that Fort Transfer does not dispute that the arbitrary and capricious standard is the appropriate standard.

The Seventh Circuit has described the arbitrary and capricious standard of review as follows:

> The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. Any questions of judgment are left to the . . . administrator of the Plan . . . . Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement.

*Pokratz v. Jons Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985). Further, in reviewing the Pension Fund's decision to expel Fort Transfer from participation in the fund, only the evidence considered by the Trustees can be considered by the court in its analysis. *See Hess v. Hartford Co.*, 274 F.3d 456, 462 (7th Cir. 2000).

Assuming the Trustees' decision is reviewable for purposes of this ruling on Fort Transfer's motion for a preliminary injunction, the court concludes based on the record before it, which

9

includes the minutes of the meeting at which the Trustees decided to expel Fort Transfer, Fort Transfer cannot possibly show that it has a reasonable likelihood of success in showing that the Trustees' decision was arbitrary and capricious. However, before specifically discussing the Trustees' decision to expel Fort Transfer, the court digresses to discuss some background facts in order to put this analysis in context.

Fort Transfer has participated in the Pension Fund pursuant to collective bargaining agreements and a participation agreement covering Fort Transfer's Morton, Illinois facility with Teamster Local 627 since 1992. Fort Transfer's most recent collective bargaining agreement covers the period from September 28, 2002 through September 27, 2008 (the "2002-2008 Agreement"). The 2002-2008 Agreement covers all of Fort Transfer's full and regular part-time drivers and requires contributions to the Pension Fund on behalf of all covered employees. The 2002-2008 Agreement permits subcontracting, but only if there are no company drivers available for the work. Under the participation agreement, Fort Transfer agreed to be bound by the Pension Fund's trust agreement and the rules of the Pension Fund.

The determination of the benefit levels provided by the Pension Fund and the contribution rate needed to support the benefits are based upon the cost estimates of actuaries. In making their calculations, the actuaries assume that participating employers are complying with the rules of the Pension Fund. One of these rules, known as the Adverse Selection Rule, prohibits participating employers from limiting participation to only the individuals who are the most certain to vest and receive benefits. The actuaries assume that some participants who have contributions paid on their behalf will never receive any pension benefits because they will not satisfy the five-year vesting requirement and that there will be employees who will continue to work and have contributions paid

10

on their behalf even after they are eligible to retire. The contributions paid on those employees are necessary to support the level of benefits provided to other employees.

Without contributions for all persons doing covered work, the actuarial assumptions are unsound, and there may not be sufficient assets to pay the promised benefits. Further, the actuaries assume that retiring members will be replaced by new members whose contributions will help fund the benefits paid to the retirees. As the Eighth Circuit accurately indicated:

> [I]t is a universal actuarial assumption that the contributions of new members who replace retiring members will be used in part to pay the benefits due retired members.

*Central Hardware v. Central States Pension Fund*, 770 F.2d 106, 110 (8th Cir. 1985). Thus "if no new members enter the group, benefit funds will run out before all the benefits due to retirees based on their life expectancies are paid off." *Id.* To protect the Pension Fund, the trust agreement contains a provision that authorizes the Pension Fund's Board of Trustees to terminate the participation of an employer "whenever they determine" an employer is engaged in any practice "that threaten[s] to cause economic harm to, and/or impairment of the actuarial soundness of the [Pension] Fund". *See* Trust Agreement, Art. III, Sec. I.

At their November 8, 2006 meeting, the Pension Fund's Board of Trustees decided to terminate Fort Transfer's participation due to its alleged violation of the Adverse Selection Rule. The facts presented to the Trustees indicated that the number of employees reported by Fort Transfer had declined from 70 in 1996 to seven in October 2006. Only two new hires had been reported by Fort Transfer since 1997, one was hired in 1998 and the other was hired in 2000. Neither of these two new hires worked more than 8 months for Fort Transfer. Fort Transfer conceded that it was currently using the services of 11 year-round independent contractors at its Morton, Illinois location.

If these individuals were employees, contributions would be paid on their behalf to the Pension Fund.

An audit led the Pension Fund's staff to conclude that the decline was at least partially caused by the transfer of covered work to the noncovered independent contractors in violation of the Adverse Selection Rule. Fort Transfer, however, asserts that this conclusion is incorrect and maintains that the decline resulted from changes in the nature of Fort Transfer's business and its inability to attract any new employee drivers.

The Trustees rejected Fort Transfer's explanation for several reasons. First, the Trustees concluded that it did not seem plausible that Fort Transfer could not attract a single permanent employee driver during the last ten years if it had actually tried to hire employees. Second, the Trustees noted that Fort Transfer's web site allowed prospective drivers to choose whether they wanted to be employees or independent contractors by selecting either the employee job application form or the independent contractor application form. Given this choice, the Trustees determined that a driver with little or no history with the Pension Fund would be less likely to choose employee status. The Trustees then concluded that giving prospective drivers this choice violated the Adverse Selection Rule, especially when, as in Fort Transfer's case, all of the drivers had selected the independent contractor status option.

Third, the Trustees believed that Fort Transfer's position was undermined by its web site which listed benefits available for employee drivers, including a 401K with company match, cancer and disability insurance, and health and dependent care reimbursement accounts. None of these benefits are authorized by the 2002-2008 Agreement, and there is no mention on Fort Transfer's web site of Local 627 or the Pension Fund. This led the Trustees to conclude that employee drivers were only being sought for Fort Transfer's non-union location in Louisiana.

Finally, the Trustees relied upon the audit which revealed that Fort Transfer had no difficulty attracting employee drivers at its non-union locations. Fort Transfer's payroll records indicated that it had hired 174 employee drivers between 2000 and 2002. Only one of those new employees worked at the covered Morton, Illinois location, and he worked for Fort Transfer less than nine months. The number of employee drivers who worked at Fort Transfer's non-union locations from 1999 to 2001 increased by 33%. At the same time, the number of reported drivers at Morton declined by more than 50%.

Ultimately, the Trustees concluded that Fort Transfer's assertion that it had unsuccessfully tried to attract employee drivers at the covered Morton location was not credible in light of its ability to successfully attract employee drivers at its non-union facilities. Based on all of this, the court cannot say that the Trustees' decision to expel Fort Transfer was arbitrary and capricious, and it clearly is supported by the record before this court.

### B. Fort Transfer Has an Adequate Remedy at Law

Although Fort Transfer may not like the remedy provided for by Congress, it is a remedy nonetheless, and this court declines to interfere with Congressional mandate of how to handle the assessment of withdraw liability, which has yet to be assessed in this case. The court, however, will address this point even though the assessment has yet to occur.

The MPPAA imposes withdrawal liability on an employer withdrawing from a multiemployer pension plan. *See* 29 U.S.C. §§ 1381, 1391. Congress wanted "to ensure that [withdrawing] employer[s] would not leave a plan with vested pension obligations that were only partially funded." *Central States, Southeast and Southwest Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994) (citing *Robbins v. Lady Baltimore Foods, Inc.*, 868 F.2d 258, 261 (7th Cir.1989)). Thus, employers who withdraw from pension plans must still pay their

proportionate share of the "unfunded vested benefits." 29 U.S.C. § 1381(a),(b)(1). This withdrawal liability "ensures that 'the financial burden of [the] employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits.'" *Bell Transit*, 22 F.3d at 707 (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992)). In order to collect withdrawal liability, a pension fund must "determine the amount of withdrawal liability owed by a withdrawing employer, 29 U.S.C. §§ 1382, 1391, and send the employer a notice and demand for payment of that amount, 29 U.S.C. § 1399(b)(1)." *Central States, Southeast and Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 888 (7th Cir. 1992).

Employers who disagree with the assessment of withdrawal liability first may ask the plan to review its assessment and then may initiate arbitration. *See* 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). However, the initiation of arbitration proceedings "does not suspend the employer's obligation to pay in accordance with the schedule of payments assessed by the plan." *Bell Transit*, 22 F.3d at 707 (citing *Jaspan v. Certified Industries, Inc.*, 645 F. Supp. 998, 1004 (E.D.N.Y. 1985)). Rather, the MPPAA establishes a "pay now, dispute later" scheme, under which an employer must make interim payments until liability is finally determined. *See Central States, Southeast and Southwest Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 495-96 (7th Cir. 2000). Specifically, the MPPAA provides that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or schedule." 29 U.S.C. § 1399(c)(2). This provision serves the dual purpose of reducing the risk that an employer will not pay and of encouraging speedy adjudication by requiring immediate arbitration before the courts become involved in the merits of the dispute.

*See Trustees of Chicago Truck Drivers v. Central Transport, Inc.*, 935 F.2d 114, 118-19 (7th Cir. 1991).

The mandate of the MPPAA is that until the merits of a dispute about a withdrawal and the assessment of withdrawal liability are decided, whether its voluntarily or not, an employer is liable for interim payments subject, of course, to refund if he prevails. The Seventh Circuit's holding in *Bell Transit* is clear – the MPPAA dictates a "pay now, dispute later" procedure. *See id.*; *see also Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1341 (7th Cir. 1992) ("[T]he employer may not defer withdrawal liability payments pending arbitration. If he wins the arbitration he will get back whatever he has paid but the rule is pay first, arbitrate after.")

Therefore, assuming *arguendo* that review of Fort Transfer's expulsion is not subject to mandatory arbitration but rather properly before us, the court concludes, based on the record submitted and pursuant to the arbitrary and capricious standard of review, that Fort Transfer does not have a greater than negligible chance of winning and, therefore, cannot show a reasonable likelihood of success on the merits for purposes of obtaining injunctive relief. The court also believes that Fort Transfer has an adequate remedy at law based on the statutory procedures mandated by the MPPAA.

### C. Fort Transfer Has Not Demonstrated Sufficient Irreparable Harm

The court realizes that, in certain circumstances, a plaintiff such as Fort Transfer could suffer substantial adverse economic consequences for its expulsion from a pension fund and the assessment of withdrawal liability, but the court is not convinced that the alleged harm Fort Transfer claims here is sufficient to warrant the court's intervention. Although Fort Transfer speculates that there may be a work stoppage at its Morton facility because the union drivers will be upset about the loss of

15

pension benefits and health coverage, Fort Transfer does not submit any evidence of a realistic possibility of a work stoppage or strike. The record shows that it is unlikely there will be a work stoppage or strike because Fort Transfer's collective bargaining agreement with the union requires that all disputes be arbitrated. Moreover, the agreement also contains a no strike clause. Indeed, it appears that the union recognizes that the dispute is arbitrable because the record shows that the union demanded arbitration on December 5, 2006.

Fort Transfer also complains about the amount of the interim payments and claims that the interim payments may effect Fort Transfer's ability to continue with its business. The record shows that the estimated complete withdrawal liability is $966,377 and the estimated monthly interim payments will be less than $20,000. The court is not convinced that Fort Transfer will be irreparably harmed and unable to pay this amount. In addition, as discussed above, Congress decided to require interim payments to protect pension funds from the risk that failing companies would be in a position to pay the full amount of the withdrawal liability after arbitration:

> Consider why Congress gave pension funds that right to hold all the stakes while arbitrators resolve disputes. Trucking is a competitive business. Many of the firms are small and thinly capitalized. During the time consumed by the arbitration and any proceedings to resolve or enforce the award, some will go out of business. The employers most likely to see the pinch of interim payments are those skating closest to the edge, posing the greatest risk to the plans if payment is deferred. . . . Much of pension law is designed to alleviate this risk.

*Central Transport, Inc.*, 935 F.2d at 118-119.

Fort Transfer's alleged financial condition, when examined in light of this rationale, actually suggests that an injunction should not be entered. "[I]t would contort the law if [courts] were to allow the undercapitalized or financially precarious companies that pose the very risk to pension

funds the MPPAA was designed to correct to defer payment because they pose that risk." *Galgay v. Beaver Brook Coal Co.*, 105 F.3d 137, 140 (3d Cir. 1997).

### D. An Injunction Is Not In The Public Interest

The public has a strong interest in ensuring that the mandates of Congress are upheld and that the provisions of ERISA and the MPPAA are enforced by the courts. Although there also is an interest to ensure that pension funds are not railroading small businesses and arbitrarily expelling them from participation in pension funds. There is no evidence of that in this case. Thus, on balance, the court concludes that an injunction is not in the public interest in this case.

### CONCLUSION

For all of the reasons set forth in the court's Memorandum, Opinion and Order, defendant Central States, Southeast and Southwest Areas Pension Fund's motion [9] to dismiss is granted, and Fort Transfer Company, Inc.'s motion [24] for a writ of prohibition, a preliminary injunction and expedited hearing is denied.

It is so ordered.

Wayne R. Andersen
United States District Court

Dated: March 2, 2007